UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLASTICS PLUS, INC.,

        Plaintiff,

                                    CASE NO. 2:12-CV-10125
v.                                HONORABLE GEORGE CARAM STEEH

FORTIS PLASTICS, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S RENEWED MOTION FOR  SUMMARY JUDGMENT (DOC. 33)**

      This breach of contract lawsuit arises out of plaintiff Plastic Plus, Inc.'s ("Plastics Plus'") sale of plastic resin material to defendant manufacturer Fortis Plastics, LLC ("Fortis") and its subsidiary, non-party FPG Mexico, S DE R L DE CV ("FPG Mexico").    Of the $311,140.79 in dispute, Plastic Plus' own records show that $299,133.58 is attributable to FPG Mexico. Fortis admits that its own invoices show a possible $12,135.19 owing to Plastics Plus, but claims the rest of the funds are owed by its subsidiary, non-party FPG Mexico. The parties previously filed cross-motions for summary judgment which the court heard on May 30, 2013.  The court denied the motions but allowed Plastics Plus additional time to conduct discovery on the issue of whether Fortis could be liable for the conduct of its subsidiary, FPG Mexico. The parties have now completed additional discovery, and Fortis has filed a renewed motion for summary judgment.  On October 30, 2013, this court heard oral argument on that motion.  At that hearing, the court asked the parties to submit copies of the two purchase orders and invoices which Fortis admits are owing so that it

could compare those documents against those which Fortis claims are owed solely by FPG Mexico. The parties have now submitted those purchase orders and invoices. Having carefully reviewed those documents, the court finds that they do not support Plastics Plus' theory that Fortis is liable for material shipped to its wholly owned subsidiary. Because Plastics Plus has failed to show that this court should pierce the corporate veil, Fortis' motion shall be granted in part as to all damages except as to the $12,135.19 which is due and owing to Plastics Plus.

## BACKGROUND

Plastics Plus is a Michigan corporation that sells and distributes plastic resin material used in injection molding in the United States and Mexico. Fortis is an Indiana corporation headquartered in South Bend, Indiana that is in the business of manufacturing. FPG Mexico is a foreign corporation located in Ramos Arizpe, Coahuila, Mexico. Plastics Plus alleges that it shipped plastic resin material to Fortis on a purchase order and invoice basis to its facilities in Texas and Mexico from November, 2010 to October 7, 2011. According to Plastics Plus, Fortis would submit a purchase order document to it, and Plastics Plus would generate a sales order document, a packing slip, and an invoice. With each shipment, Plastic Plus sent a copy of a document entitled, "Standard Terms and Conditions," which it contends identified and governed the rights of the parties with respect to their contractual relationship. That document defines the parties as follows:

> "Buyer" refers to Fortis Plastics, LLC, or one of its affiliates, as identified in the Purchase [O]rder. "Seller" refers to the party providing the material and work covered by this order, as identified in the Purchase Order.

(Doc. 19, Ex. 3). The Terms and Conditions do not provide for joint and several liability of Fortis and its "affiliates." Plastics Plus alleges that from August 25, 2011 until October 7,

2011, it shipped plastic resin material to Fortis fifty-nine times in this fashion. (Doc. 19, Ex. 2). Plastics Plus alleges that Fortis owes $311,140.79 for plastic resin material received during the subject time period.

On January 11, 2012, Plastics Plus filed a five-count complaint against Fortis alleging (1) breach of contract, (2) open account, (3) quantum meruit, (4) implied contract, and (5) fraudulent misrepresentation. (Doc. 1). Fortis filed a motion to dismiss the fraud count on February 28, 2012 (Doc. 5), which this court granted. (Doc. 10). In support of its earlier motion for summary judgment, Plastics Plus submitted one sample purchase order from Fortis, a sales order and invoice showing plastic resin sold to FPG Mexico, and a document entitled, "Accounts Receivable Aged Invoice Report" (hereinafter "Accounts Receivable Report") showing a total outstanding balance for plastic resin material of $311,140.79. (Doc. 19, Ex. 1 and 2). In its response, Fortis argues that none of the invoices Plastics Plus submitted were issued to Fortis, but instead were issued to FPG Mexico, and that the Accounts Receivable Report separates charges between Fortis ($12,007.21 owing) and FPG Mexico ($299,133.58 owing). The court's review of the Accounts Receivable Report confirms what Fortis argues and shows only two invoices to Fortis for the $12,007.21, with the rest of the invoices owing by FPG Mexico. Fortis admits that its own records show an unpaid balance to Plastics Plus of $12,135.19, but argues that it is investigating if any setoff applies to that sum, and it does not concede that the amount is due and owing.

Based on Fortis' admission that the Accounts Receivable Report showed it to be liable for two purchase orders, the court asked the parties to submit a copy of those two orders so that the court could compare those documents against the purchase orders and

invoices which Fortis contends involved only its wholly owned subsidiary.   In its supplemental brief, Plastics Plus attached 59 purchase orders and invoices. Of those, only one shows that the plastic resin material is being sold to Fortis Plastics. That invoice matches the October 17, 2011 invoice listed on the Accounts Receivable Report in the amount of $6,180.88 owed by Fortis.   (Doc. 38, Ex. A). That invoice unequivocally states "Sold To: Fortis Plastics LLC."   By contrast, the rest of the invoices state "Sold To: FPG Mexico."   Fortis attached a second invoice dated August 25, 2011 showing that Plastics Plus sold it material and lists the amount owing as $5,850.   Although there is a slight discrepancy in the amount, that invoice appears to match up with the other invoice listed on the Accounts Receivable Report showing Fortis liable for the sale of plastic resin material.

In its renewed motion for summary judgment, Fortis reiterates its earlier argument that Plastics Plus has failed to show an enforceable contract or outstanding invoices, and that Plastics Plus has sued the wrong party - that its real relief, if any, should come from FPG Mexico.   At the prior hearing of the parties' cross-motions for summary judgment, the court allowed Plastics Plus additional time to conduct discovery on the issue of whether Fortis could be liable for the contracts of its subsidiary.   Plastics Plus has now completed that discovery and has come forward only with six wire transfer records showing that Fortis wired money from its New York and California banks to Plastics Plus for plastic resin material that was shipped to FPG Mexico from June to October, 2011. (Doc. 35, Ex. A). These wire transfers account for approximately $180,472.   Fortis responds that the payments were made by FPG Mexico out of the FPG Mexico sub-account of Fortis' omnibus account.   Plastics Plus also relies on an August 11, 2011 e-mail from FPG

-4-

Mexico's new plant manager to Plastic Plus' commercial development manager, Ron Kuczera, in which he states, "my name is Derek Foster and I am the new plant manager for the Fortis plant in Ramos." <u>Id.</u> at Ex. B. His e-mail discusses setting up a conversation to discuss the cash flow hardship and financial difficulties of FPG Mexico. <u>Id.</u> The wire transfers and e-mail fail to support Plastic Plus' theory that FPG Mexico and Fortis are not separate and distinct corporations and provides no basis for holding Fortis liable for the contracts of its subsidiary.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See Redding v. St. Eward</u>, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>see</u> also <u>Cox v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Amway Distributors Benefits Ass'n v. Northfield Ins. Co.</u>, 323 F.3d 386, 390 (6th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.

-5-

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

**ANALYSIS**

1.      **Breach of Contract and Open Account**

Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury.  Webster v. Edward D. Jones & Co., 197 F.3d 815, 819 (6thCir. 1999).  The essential elements of a valid contract are: (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement,

and (5) mutuality of obligation. Thomas v. Leja, 187 Mich. App. 418, 422 (1991) (citations omitted). Once the plaintiff establishes the elements of a contract, it must then establish that the contract was breached and damages resulting from the breach. Alan Custom Homes, Inc. v. Krol, 256 Mich. App. 505, 512 (2003). Where performance is due under a contract, nonperformance constitutes a breach. Woody v. Tamer, 158 Mich. App. 764, 771–72 (1987). Similarly, a claim for an open account is an independent cause of action "that arises out of the course of dealing between a creditor and debtor" that may arise out of an express or implied contract. Fisher Sand Gravel Co. v. Neal A. Sweebe, Inc., 494 Mich. 543, 569 (2013). An open account claim "is an action to recover the single liability stemming from the parties' credit relationship." Id. at 570.

Plastics Plus has failed to prove the existence of a contract or an open account between the parties other than as to the $12,135.19, which is not seriously disputed. In its prior ruling, this court rejected Plastics Plus' argument that sales orders and invoices supported the existence of a contract between Plastics Plus and Fortis, as those sales orders and invoices identified only FPG Mexico as the buyer and did not identify Fortis at all. (Doc. 19, Ex. 1). Having now reviewed all of the underlying purchase orders and invoices in this case, it is clear that only two purchase orders involved sale of material to Fortis. The August 25, 2011 and October 17, 2011 invoices clearly identify Fortis as the buyer. In connection with those two invoices, the purchase orders are on Fortis letterhead and set forth Fortis's Missouri address and set forth a "ship to" address to Fortis' Missouri facility. By contrast, all of the other 57 invoices identify FPG Mexico as the buyer. Although those purchase orders state "Fortis Plastics" at the top of the page, directly underneath Fortis' name, they state, "FPG Mexico" and set forth its Mexican address as

-7-

well as a "ship to" address to FPG Mexico.  Plastic Plus' reliance on the fact that Fortis'
name appears at the top of the purchase orders does not support its theory that it had
entered viable contracts with Fortis.  Fortis was not named on any of the invoices which
expressly state that the material was "sold to" FPG Mexico.  After reviewing the 59 invoices
at issue in this case, the court concludes that Fortis is liable only for the two invoices which
identify it as the buyer.

Fortis argues that the Terms and Conditions define the parties in such a way as to
preclude joint and several liability for Fortis and one of its affiliates.  Specifically, the Terms
and Conditions provide:

> "Buyer" refers to Fortis Plastics, LLC, or one of its affiliates, as identified in the
> Purchase [O]rder.   "Seller" refers to the party providing the material and work
> covered by this order, as identified in the Purchase Order.

(Doc. 19, Ex.3).  The use of the term "or" in the above quoted provision makes it clear that
the Buyer is either Fortis, *or* one of its affiliates, here FPG Mexico, not both.  Plastics Plus
does not address the above quoted provision, but alleges that FPG Mexico's factory in
Ramos Arizpe, Coahuila Mexico, is really Fortis' facility, and that Fortis' business dealings
in Mexico were an extension of its Indiana corporation.  In essence, Plastics Plus seeks to
"pierce the corporate veil" to hold Fortis liable for the alleged breach of contract of its
subsidiary.

### 2.    Piercing the corporate veil

"Michigan law presumes that, absent some abuse of corporate form, parent and
subsidiary corporations are separate and distinct entities."   Seasword v. Hilti, Inc., 449
Mich. 542, 547 (1995).  The Michigan Supreme Court explained that the presumption that
parent and subsidiary corporations are distinct entities, also called the "corporate veil,"

2:12-cv-10125-GCS-MAR   Doc # 39   Filed 12/13/13   Pg 9 of 14   Pg ID 355

"may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some other clearly overriding public policy.'" Id. (quoting Wells v. Firestone, 421 Mich. 641, 650 (1984)).  Michigan courts will not pierce the corporate veil unless, "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss."  Servo Kinetics, Inc. v. Tokyo Precision Instr. Co., 475 F.3d 783, 798 (6th Cir. 2007) (citing Foodland Distrib. v. Ali-Naimi, 220 Mich. App. 453, 457 (1996)).  The Michigan Supreme Court has held that "[i]n determining whether the corporate entity should be disregarded and the parent company held liable on the contracts of its subsidiary because the latter served as a mere instrumentality or adjunct of the former, each case is sui generies and must be decided in accordance with its own underlying facts."  Herman v. Mobile Homes Corp., 317 Mich. 233, 243 (1947).

The analysis of whether a subsidiary is the "mere instrumentality" or "alter ego" of the parent corporation is a fact specific inquiry requiring the court to consider many factors including:

> if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

United Ins. Group Agency, Inc. v. Patterson, No. 299631, 2011 WL 5067251, *2 (Mich. App. Oct. 25, 2011) (citing Seasword, 449 Mich. at 548 n. 10, and Herman, 317 Mich. at 239-41).

-9-

In Servo Kinetics, the Sixth Circuit held that there was a triable issue of fact for the jury as to whether a parent corporation could be held liable for the breach of contract by its subsidiary where evidence existed that the parent had dismantled the subsidiary for its own benefit, acquired the subsidiary's assets without payment of compensation, integrated the subsidiary's business and workforce into its own, and installed its own employees as the directors of the subsidiary. 475 F.3d at 798-800.  The facts of this case are not analogous to those of Servo Kinetics or others where courts have allowed the corporate veil to be pierced.[1]   The only evidence Plastics Plus relies upon here in support of its theory that FPG Mexico is the alter ego of Fortis is the fact that certain wire transfers were made from Fortis' accounts in the United States for the payment of plastic resin material shipped to FPG Mexico in Mexico, and an e-mail from an employee of FPG Mexico wherein he refers to the factory as a "Fortis plant."  (Doc. 35, Ex. A and B).  This is not sufficient to pierce the corporate veil.  Plastics Plus has failed to identify any authority which would allow the court to hold Fortis liable for the contracts of its subsidiary based solely on the fact that some payments were made from the parent's account.

_____

[1]See e.g. Herman, 317 Mich. at 239-40 (two subsidiaries were alter ego of parent where all subsidiary's capital and credit provided by parent, one subsidiary purchased all supplies from parent, capital of one subsidiary was grossly inadequate, officers and directors of subsidiary were officers and directors of parent, officers and employees of parent's payroll provided gratuitous services to subsidiary, and policies and decisions of subsidiary were determined by parent's president); Tredit Tire & Wheel Co., Inc. v. Regency Conversions, 636 F. Supp. 2d 598, 602 (E.D. Mich. 2009) (denying motion to dismiss where facts supported piercing corporate veil where parent replaced subsidiary's president with its own employee, parent's president made tactical and strategic decisions about subsidiary's business affairs, parent decided to liquidate subsidiary and determined which vendors to pay).

-10-

Plastics Plus bears the high burden of piercing the corporate veil.  See Seasword, 449 Mich. at 548.  According to Fortis, using an omnibus account is a common business practice, especially when a foreign subsidiary of an American parent corporation is involved.  True or not, the mere maintenance of such an account, without more, is insufficient to pierce the corporate veil.  While the fact that a parent corporation finances its subsidiary is one factor the court may consider, there are many other factors discussed *supra*, which must be met before the court can find that the subsidiary is a mere instrumentality of the parent.  Plastics Plus has made no such showing here.  For instance, Plastics Plus has not shown that Fortis owns all or most of the capital stock of FPG Mexico, that Fortis and FPG Mexico have common directors or officers, that Fortis subscribes to all the capital stock of FPG Mexico, that FPG Mexico is grossly undercapitalized, that Fortis pays the salaries of FPG Mexico employees, that FPG Mexico has substantially no business except with Fortis, that in the papers of Fortis or in the statements of its officers, FPG Mexico is described as a department of Fortis, that Fortis uses the property of FPG Mexico as its own, and finally fails to show that the directors or executives of FPG Mexico do not act independently in their own interests but take their orders from Fortis in the latter's interest.  See CM Corp. v. Oberer Dev. Co., 631 F.2d 536, 539 (7th Cir. 1980) (outlining factors to pierce the corporate veil separating a parent corporation from its subsidiary).  In sum, Plastics Plus has failed to show that FPG Mexico is the alter ego of Fortis and as such, Fortis cannot be liable for the obligations of its subsidiary.

Fortis admits to an outstanding balance owed to Plastics Plus of $12,135.19.  (Doc. 22, Ex. B).  It has, however, submitted the affidavit of its Chief Restructuring Officer, Barry Kasoff, who states "Fortis has not yet completed its analysis of what defects, flaws or other

irregularities, if any, affected the products supplied to Fortis by Plastics Plus and for which Fortis would be entitled to deduct from any indebtedness to Plastics Plus.  Any such issues, if identified, could reduce the total amount allegedly owed to Plastics Plus by Fortis." Id. Discovery has closed and the bench trial of this action has been adjourned from its originally scheduled date of June 24, 2013.  Fortis' claim that further investigation *might* reveal a possible set-off of the amount due and owing is not convincing at this late stage of the proceedings.   There is no genuine issue of material fact as to the $12,135.19 outstanding debt admitted by Fortis, and Plastics Plus is entitled to summary judgment as to this amount.

Fortis argues that since the amount in controversy is only the $12,135.19 which it admits is showing on its invoices - the action must be dismissed for failure to meet the jurisdictional amount.  Fortis' argument lacks merit.  In Jones v. Knox Exploration Corp., 2 F.3d 181 (6th Cir. 1993), the Sixth Circuit explained that a federal court's jurisdiction ordinarily depends "on the facts as they exist when the complaint is filed." Id. at 182 (citations omitted). If a good faith claim of sufficient amount is made in the complaint, subsequent events that reduce the amount below the statutory requirement do not require dismissal. Id. at 182–83; see St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938).  Because it appears that Plastics Plus had a good faith basis for meeting the jurisdictional amount at the time it filed its Complaint, dismissal for want of jurisdiction is not warranted even though Plastics Plus recovers only $12,135.19.

3.    **Quantum meruit and implied contract**

Fortis also seeks summary judgment as to Plastics Plus' claims for quantum meruit (Count III), and implied contract (Count IV), on the same basis that Plastics Plus has sued the wrong party, and its claims are really against FPG Mexico.  For the same reason that Fortis is entitled to summary judgment on the breach of contract claim (Count I) and open account (Count II), Fortis' motion shall be granted as to those claims as well.  Quantum meruit is an equitable remedy.  "[I]n order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."  Morris Pumps v. Centerline Piping, Inc., 273 Mich. App. 187, 195 (2006).  Implied contracts are either implied in fact, which requires a meeting of the minds that was not reduced to some formality, or implied in law, in which case the court will find the existence of a contract, even where none existed, in order to prevent an injustice. Cascaden v. Magryta, 247 Mich. 267, 270 (1929).  As with a quantum meruit claim, a claim for breach of implied contract requires a showing that (1) the defendant received some benefit from the plaintiff, and (2) the receipt of the benefit was inequitable, absent reasonable compensation.  Matter of Estate of Lewis, 168 Mich. App. 70, 74 (1988) (citation and quotation marks omitted).  In the instant case, Plastics Plus may not recover under the theory of quantum meruit or implied contract as it has failed to show that Fortis received any benefit, as all of the product was shipped to FPG Mexico, not to Fortis. Moreover, as discussed supra, Plastics Plus has failed to establish alter ego liability of Fortis for the acts of its subsidiary.

-13-

## <u>CONCLUSION</u>

For the reasons stated above, Fortis' motion for summary judgment (Doc. 33) hereby is GRANTED IN PART as to all claims except is DENIED IN PART as to the $12,135.19 Plastics Plus has proved is owing.

**IT IS SO ORDERED**.

Dated:  December 13, 2013

s/George Caram Steeh_____
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on December 13, 2013, by electronic mail.

s/Barbara Radke
Deputy Clerk